IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

SHAWANDA BELL O/B/O K.J.D.,          )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          CV 123-025
                                     )
MARTIN O'MALLEY, Commissioner        )
of Social Security Administration,[1] )
                                     )
          Defendant.                 )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Shawanda Bell, on behalf of K.J.D., appeals the decision of the Commissioner of Social Security ("The Commissioner") denying Claimant K.J.D.'s application for Supplemental Security Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

On January 28, 2021, Plaintiff applied for SSI on behalf of Claimant K.J.D., alleging disability from attention deficit hyperactivity disorder ("ADHD"), asthma, deficient behavior

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Martin O'Malley, Commissioner of Social Security Administration, as the proper Defendant.

disorder, and opposition defiant disorder ("ODD"), with a stated onset date of June 15, 2015.  Tr. ("R."), pp. 57, 154-60.  At the time of the application under review, Claimant was nine years old, and he was eleven years old at the time the Administrative Law Judge ("ALJ") issued the opinion under consideration.  R. 26, 154.  The Social Security Administration denied Claimant's application initially and on reconsideration.  R. 57-63, 65-73.  Plaintiff requested a hearing before an ALJ, and ALJ Jonathan T. Shoenholz held a hearing on April 13, 2022.  R. 19-26, 32-55.  At the hearing, the ALJ heard testimony from Claimant's mother, Shawanda Bell.  Id.  On May 16, 2022, the ALJ issued an unfavorable decision.  R. 19-26.

Applying the three-step sequential process for claimants under eighteen years of age as required by 20 C.F.R. § 416.924(a), the ALJ found:

1.    The claimant has not engaged in substantial gainful activity since January 28, 2021, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

2.    The claimant has the following severe impairments: attention deficit hyperactivity disorder ["ADHD"] and oppositional defiant disorder (20 CFR 416.924(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).  Thus, the undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since January 28, 2021, the date the application was filed (20 CFR 416.924(a)).

R. 19-26.

When the Appeals Council ("AC") denied Plaintiff's request for review on October 5, 2022, R. 10-12, 150-51, the Commissioner's decision became "final" for the purpose of judicial review.  See 42 U.S.C. § 405(g).  Plaintiff then filed this civil action requesting reversal or remand

of that adverse decision.   (Doc. no. 1.)   Plaintiff argues the Commissioner's step three determination is not supported by substantial evidence due to the ALJ's failure to properly evaluate medical and non-medical opinions.  <u>See</u> doc. no. 13 ("Pl.'s Br."); doc. no. 15 ("Pl.'s Reply Br."). The Commissioner maintains the administrative decision is supported by substantial evidence, arguing against Plaintiff's one enumeration of error.  <u>See</u> doc. no. 14 ("Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997).   When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991).   Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 (11th Cir. 1991).   Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting <u>Bloodsworth</u>, 703 F.2d at 1239).   If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the Claimant.  <u>Crawford v. Comm'r of Soc. Sec.</u>,

363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

### A.   The ALJ Properly Considered Evidence from Dr. Courtney's Consultative Examination and Claimant's Teachers' Questionnaires

Plaintiff's sole enumeration of error is that the ALJ's step three determination is not supported by substantial evidence because he failed to properly evaluate medical and non-medical opinions.  Pl.'s Br., pp. 9-16.  Specifically, Plaintiff argues the ALJ determined Claimant's limitations, or lack thereof, without (1) indicating the exact persuasive value of Dr. Courtney's consultative medical opinion and (2) failing to properly evaluate the four questionnaires submitted by Claimant's teachers.  Id.  As discussed in greater detail below, the Court finds the ALJ made no error of law, and his decision is supported by substantial evidence.

### 1.    The Three-Step Sequential Process to Evaluate Disability in Children

A three-step sequential process is used to determine whether a child is disabled.  20 C.F.R. § 416.924.  At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied.  Id. § 416.924(b).  At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied.  Id. § 416.924(c).  At the third and final step, the Commissioner must determine whether the claimant's impairments meet, medically equal, or functionally equal the Listings.  Id. § 416.924(d).  If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, he will not be found disabled.  Id. § 416.924(d)(2).

"A child's limitations 'meet' the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment."  Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1279 (11th Cir. 2004).   In order to show that her impairment meets a Listing, a claimant needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  "Limitations 'medically equal' the limitations in the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'"  Shinn, 391 F.3d at 1279.  The claimant bears the burden of presenting specific medical findings to show she meets or equals a Listing.  Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In determining whether an impairment or combination of impairments "functionally equals the severity" of a listed impairment, the ALJ must consider six major domains of life,

including: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Parks *ex rel.* D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 851 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.926a(a), (b)(1), (d)). The claimant has the burden of proof to show that she has an "extreme" limitation in one domain, or "marked" limitations in two domains. Id. A marked limitation is one that "interferes seriously" with a child's ability to independently initiate, sustain or complete activities and "also means a limitation that is 'more than moderate' but 'less than extreme.'" Id. An extreme limitation is one that "interferes very seriously" with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). However, a rating of extreme is reserved for only the "worst limitations," although this "does not necessarily mean a total lack or loss of ability to function." Id.

### 2. Regulations for Evaluating Medical Opinions for Claims Filed After March 27, 2017

Because Plaintiff filed her SSI application on behalf of Claimant on January 28, 2021, R. 19, the ALJ assessed the medical evidence in the record under recently revised regulations. "For claims filed on or after March 27, 2017, the ALJ will not defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s) or prior administrative medical finding(s). This regulation abrogated our earlier precedents applying the treating-physician rule, which required good cause to discount a treating physician's opinion." Sturdivant v. Soc. Sec. Admin., Comm'r, No. 22-13952, 2023 WL 3526609, at *3 (11th Cir. May 18, 2023) (*per curiam*) (citations and internal quotes omitted); 20 C.F.R. § 416.920c(a) (explaining ALJ does not "defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources"); see also Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 897 (11th Cir. 2022) (explaining 2017 revision eliminated the treating-physician rule and prohibits ALJs from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any medical opinion(s)" (citations omitted)).   Elimination of the treating source rule is intended to remove "confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  Harner, 38 F.4th at 897; 20 C.F.R. § 416.920c(c)(1)-(c)(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  See Sturdivant, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(b)(2).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record.  See Sturdivant, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(c)(1)-(c)(2).

Furthermore, the ALJ need not articulate how it considered the factors for each medical opinion or prior administrative medical finding from one medical source individually.  Freyhagen v. Comm'r of Soc. Sec. Admin., No. 318-CV-1108, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing 20 C.F.R. § 404.1520c(b)(1) (2017)).  "Instead, when a medical source provides

multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."   20 C.F.R. §§ 416.920c(b)(1) (2017) & 404.1520c(b)(1) (2017).  Courts recognize the new regulations erect a framework that is highly deferential to the Commissioner.  See Cook v. Comm'r of Soc. Sec., No. 620-cv-1197, 2021 WL 1565832, at *4 (M.D. Fla. Apr. 6, 2021), adopted by Cook v. Comm'r of Soc. Sec., No. 620-cv-1197, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (affirming ALJ's rejection of treating source opinion because inconsistent and unsupported by record); Bunn v. Soc. Sec. Admin., Comm'r, No. 220-CV-218, 2021 WL 1171537, at *9 (N.D. Ala. Mar. 29, 2021) (same).

### 3.      The ALJ Properly Evaluated Dr. Courtney's Opinion

Plaintiff argues the ALJ failed to indicate the exact persuasive value of Dr. Courtney's consultative medical opinion.  Pl.'s Br., p. 10.  The Commissioner maintains the ALJ properly discussed Dr. Courtney's persuasiveness, even if he did not expressly articulate such. Comm'r's Br., pp. 9-10.

When discussing persuasiveness, "consistency" under the regulations refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  "Supportability" under the regulations refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." Lewno v. Kijakazi, No. 821-CV-1334, 2022 WL 3999282, at *4 (M.D. Fla. Sept. 1, 2022).

Notably, "[a]lthough the regulations require the ALJ to articulate consideration of the supportability and consistency factors when evaluating a medical opinion from a medical source, they do not require the ALJ to use any specific language to articulate consideration of the factors." Rico v. Comm'r of Soc. Sec., No. 5:22-cv-79-PRL, 2023 WL 2624753, at *4 (M.D. Fla. Mar. 24, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). "As long as the evaluation addresses the substance of the factors, the ALJ meets the articulation requirement." Id. (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)); see also Rivera v. Kijakazi, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation."); Thaxton v. Kijakazi, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." (citations omitted)).

The relevant excerpts from the ALJ's decision, in which the ALJ discusses Dr. Courtney's opinion, are as follows:

> In March 2016, the claimant presented to Dr. Audrey Courtney for consultative psychological evaluation. (Exhibit 7F). Ms. Bell complained of tantrums and fighting with his siblings. She admitted that his behavior was under better control at home than at school. On mental status examination, he demonstrated poor concentration and attention. He also demonstrated immature play with the

test items. No difficulties were noted with expressive language. His gross motor skills appeared to be adequate but had some difficulty with fine motor control. The claimant used a trial-and-error approach to problem solving and was able to plan a strategy that worked. Dr. Courtney assessed the claimant with a Full-Scale IQ of 98. She noted a relative weakness in his nonverbal memory, likely due to his inability to focus and concentrate. Dr. Courtney's diagnoses included ADHD, disruptive mood dysregulation disorder, and academic problems. The claimant has been placed in an Individualized Education Program ["IEP"]. (Exhibit 3F). During an annual review meeting in November 2020, the claimant was noted to have met a number of set goals. Specifically, he met his goal of 90% success for self-managing behaviors as of September 2018. He met his goal of 100% success for self-managing behaviors as of October 2018.

. . .

In determining the degree of limitation in the claimant's functioning, the undersigned has also considered the medical opinions in accordance with the applicable regulations. Turning to evaluation of this evidence, consultative Dr. Courtney indicated in March 2016 that the claimant is able to acquire and use information if his behavior does not interfere. (Exhibit 7F). She also indicated that he is not able to attend and complete tasks due to his activity level and inability to concentrate. Dr. Courtney stated that the claimant has difficulty with fine motor skills but is able to move about and manipulate objects. She indicated that he could care for his personal hygiene needs. The undersigned notes that this opinion is remote in time and is not fully consistent with more recent examination reports and other records. For example, while January 2019 examiner Dr. Vandiver described the claimant as fidgety "at times" and needing movement breaks, she also observed that the claimant put forth good effort and attempted all tasks and that no problems were noted with sustained attention (21F). Furthermore, the examiner observed no problems with the claimant's behavior and described the claimant as respectful. The claimant responded well to frequent breaks. While this 2019 report confirms ongoing severe impairments, it also presents a significantly improved description compared to Dr. Courtney's examination report.

R. 23-25.

Though the ALJ did not state with particularity the persuasive value assigned to Dr. Courtney's opinion, it is at most harmless error as the ALJ's decision reflects that he considered both the supportability and consistency of Dr. Courtney's opinion when inferring it was unpersuasive in light of the medical and non-medical evidence in the record. See, e.g.,

Galagarza v. Comm'r of Soc. Sec., No. 6:23-cv-449-RBD-RMN, 2023 WL 8720195, at *3 (M.D. Fl. Nov. 28, 2023) *adopted by* 2023 WL 8716751 (Dec. 18, 2023) ("In most circumstances, so long as the decision indicates that the ALJ considered the supportability and consistency factors when evaluating the persuasiveness of a medical source's opinions and provides some indication of the evidence considered, the ALJ has satisfied the burden imposed by 20 C.F.R. § 404.1520c."); Brioso v. Kijakazi, No. 22-CV-21991-JEM/Becerra, 2023 WL 5595912, at *8-*9 (S.D. Fla. Aug. 11, 2023) *adopted by* 2023 WL 5563394 (Aug. 29, 2023) (reversing ALJ's decision because "ALJ did not mention persuasiveness at all, nor did she mention supportability or consistency" and "a reviewing court must be able to discern whether the ALJ found the medical opinion persuasive, and the basis of the ALJ's findings as to supportability and consistency."); Moberg v. Comm'r of Soc. Sec., No. 6:19-cv-891, 2020 WL 4936981, at *4 (M.D. Fla. Aug. 24, 2020) (finding ALJ's consideration of medical opinions "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of each medical opinion and determined whether such opinion was supported by the weight of the record evidence").

Turning to the supportability factor, while a short discussion given the remote nature of Dr. Courtney's opinion, the ALJ nevertheless described Dr. Courtney's assessment and contrasted it with her findings. The ALJ first provided a detailed summary of Dr. Courtney's 2016 report. See R. 23. The ALJ went on to note Dr. Courtney found Claimant had behavioral issues, could not attend or complete tasks, could not concentrate, and had no fine motor skills. R. 24-25 (citing Exhibit 7F). However, Dr. Courtney also reported Claimant could move, manipulate objects, and had adequate personal hygiene. R. 24-25 (citing Exhibit 7F). By providing such analysis, the ALJ implicitly addressed the lack of supportability in pointing out

the general inconsistencies from Dr. Courtney's examination and report that did not necessarily support her overall conclusions.  See Roussin v. Comm'r of Soc. Sec., No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, at *n.5 (M.D. Fla. Dec. 16, 2021), adopted by 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) (finding "no issue with the ALJ's failure to use the proper term so long as the ALJ adequately assessed supportability").

Turning to consistency, the ALJ explicitly noted Dr. Courtney's opinion was "not fully consistent with more recent examination reports and other records."  R. 24; see also Thaxton, 2022 WL 983156, at *8 ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings.").  The ALJ first compared Dr. Courtney's remote opinion with the more recent July 2019 opinion of Dr. Vandiver, pointing out various discrepancies in these two opinions regarding Claimant's behavior and abilities.  R. 24.  Indeed, the ALJ distinguished Dr. Courtney's remote opinion after reviewing Dr. Vandiver's report, noting the "2019 report confirms ongoing severe impairments, it also presents a significantly improved description compared to Dr. Courtney's examination report."  R. 25.

Moreover, the record as a whole is inconsistent with Dr. Courtney's opinion.  After discussing Dr. Courtney's 2016 report, the ALJ provided a lengthy discussion of Dr. Vandiver, Dr. Caplan, Mr. Hall, Ms. Power, Ms. Jones-Ivey, Dr. Glanville, Dr. Harris, Dr. Kirby, and Dr. Gordon's medical and non-medical opinions.  See R. 23-25; see also Ohneck v. Comm'r, Soc. Sec. Admin., No. 22-13984, 2023 WL 8946613, at *3 (11th Cir. Dec. 28, 2023) ("As to consistency, the ALJ again pointed to the record as a whole including [the doctor]'s treatment notes and the opinions of other physicians.").  Even though the ALJ states Dr. Vandiver's report was not fully considered because it did not "assert discernable functional opinions," R.

25 (citing Exhibit 21F), the ALJ found he was especially "persuaded by the opinions of Drs. Glanville, Harris, Kirby, and Gordon as they are well supported by the weight of the evidence of record and consistent with the claimant's presentation upon routine examination," R. 25. The robust discussion of Claimant's recent behavior and abilities from 2019-2021—following the several years gap from Dr. Courtney's 2016 opinion—demonstrates Dr. Courtney's opinion of Claimant's limitations was inconsistent with subsequent evaluations and, accordingly, unpersuasive for purposes of formulating Claimant's impairments.  R. 25; see also § 416.920c(c)(5) ("[W]e will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.").  The ALJ is not required to explicitly connect every piece of evidence that is found to be inconsistent with a specific opinion or to discuss every piece of evidence, so long as the Court is able to conduct meaningful judicial review.  Gogel v. Comm'r of Soc. Sec., Case No. 220-cv-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005), and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)).

In sum, the ALJ's decision reflects that he properly considered Dr. Courtney's 2016 opinion, especially within the context of evidence that was developed *after* her opinion was rendered.  While the ALJ may not have explicitly used the terms "persuasive," "consistency," and "supportability" in his discussion of Dr. Courtney's opinion, "there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them.  What matters is whether the ALJ 'state[s] with at least some measure of clarity the grounds for his [or her] decision.'"  Raper v. Comm'r of Soc. Sec., No. 22-11103, 2024 WL 24933, at *10, n.14 (11th Cir. Jan. 3, 2024) (quoting Winschel v. Comm'r of Soc. Sec., 631

F.3d 1176, 1179 (11th Cir. 2011)); see also Matthews v. Comm'r Soc. Sec., No. 8:22-cv-679-JSS, 2022 WL 17844054, at *7 (M.D. Fla. Dec. 22, 2022) ("While the ALJ did not use the terms 'supportability' and 'consistency,' it is clear the ALJ considered both factors in evaluating the opinions.").

Indeed, the ALJ's failure to explicitly state the persuasive value of Dr. Courtney's opinion is at most harmless error, as substantial evidence not only supports the ALJ's determination that Dr. Courtney's opinion is inherently unpersuasive, but also Claimant's opined limitations under step three. Hunter v. Comm'r of Soc. Sec., 609 F. App'x 555, 558 (11th Cir. 2015) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Sarli v. Berryhill, 817 F. App'x 916, 919 (11th Cir. 2020); see also Baez v. Comm'r of Soc. Sec., 657 F. App'x 864, 870 (11th Cir. 2016) (per curiam) (concluding ALJ committed reversible error when ALJ completely failed to discuss medical opinion of examining physician, thus, failure to consider pertinent elements of opinion may have affected ultimate determination).

### 4.    Evidence From Claimant's Teachers is Not "Medical Evidence"

Plaintiff argues the ALJ erred by failing to properly evaluate all four of Claimant's teachers' reports. Pl.'s Br., p. 14. Specifically, of the four teachers' questionnaires in the record, only Mr. Hall's detailed narrative supports the ALJ's determination of Claimant's opined limitations. Id. The ALJ found Ms. Power and Ms. Jones-Ivey's opinions did not, citing a lack of supportive narrative therein. Id. Ms. Jackson's opinion was not discussed, includes a supportive explanation, and is consistent with the opinions of Dr. Courtney, Ms. Power, and Ms. Jones-Ivey. Id. The Commissioner maintains the ALJ properly considered the overall record evidence when evaluating Claimant's impairments in analyzing the teachers' reports. Comm'r's Br., pp. 16-17. The Commissioner argues the ALJ did not have to discuss all of the questionnaires

or the persuasiveness of them, because this evidence constitutes "other medical evidence" rather than medical opinions.  Id.  The Court agrees with the Commissioner.

Per the regulations, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the . . . six domains of functioning."  20 C.F.R. § 416.913(a)(2). [2]  In contrast, other medical evidence is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  Id. at (a)(3).

All four of the reports submitted by Claimant's teachers do not constitute medical opinions as the teachers merely discuss Claimant and his behavior while in the academic setting throughout various grades.  See R. 165-78, 247-57, 275-84, 285-96.  While Plaintiff may introduce statements from nonmedical sources, such as "teachers, and other school personnel" to determine the effects of the child's impairments on his or her functioning, 20 C.F.R. § 416.924a(a)(2), because the evidence was not a medical opinion, the ALJ not need evaluate the persuasiveness of the reports in the manner Plaintiff suggests.  See 20 C.F.R. § 416.913.  Moreover, whether a child has impairments that functionally equal the listings is a "decision that rests with the ALJ and cannot be determined by the conclusions of the child's teachers."  Person for D.P. v. Kijakazi, 2021 WL 4220357, at *7 (N.D. Ala. Sept. 16, 2021) (quoting 20 C.F.R. §§ 404.1520b(c), 416.920b(c)).

---

[2] The definitions in § 416.913(a) apply to §§ 416.920c(a)-(c).

It is clear the ALJ addressed and contrasted the questionnaires by three of Claimant's most *recent* teachers – one from fourth grade, and two from fifth grade. R. 24-26. The ALJ provided a thorough analysis of Mr. Hall, Ms. Power, and Ms. Jones-Ivey's teacher questionnaires, stating:

> The claimant's 5th grade social studies teacher, Mr. Hall, submitted responses to a Teacher Questionnaire dated February 21, 2022, in which he indicated that the claimant was doing well in his class and was engaged 80-90% of the time. (Exhibit 12E). He stated that the claimant responded to redirection and usually followed instructions. Mr. Hall indicated that the claimant was rarely off task and had only a slight problem following rules and seeking attention appropriately. Mr. Hall noted no problems moving about and manipulating objects or caring for himself. Mr. Hall provided fairly detailed narrative explanations for his responses.
>
> The claimant's 5th grade virtual math teacher, Ms. Power, also submitted responses to a Teacher Questionnaire in which she noted slight to very serious problems in acquiring and using information. (Exhibit 13E). Ms. Power noted slight to very serious problems attending and completing tasks, interacting and relating with others, and caring for himself. Ms. Power admittedly was unable to answer a number of questions as she is a virtual teacher that does not have regular in-person contact with the claimant. She did describe the claimant as continually spam chatting when he wants to play a game instead of doing math, and needing to turn off his chat when this happens (13E/6) in support of her assessments of serious to very serious daily problems but does not provide any other narrative explanation for her conclusions.
>
> Fourth grade reading/ELA teacher Ms. Jones-Ivey submitted a Teacher Questionnaire dated April 13, 2021 (7E). She described the claimant as at reading grade level 3.7 and math grade level 3.1, despite being in the fourth grade, and having a behavioral plan-IEP. She asserted some serious and very serious limitations in the functional domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. Outside of confirming the presence of a behavior plan, she did not provide any narrative explanation for her assessments.

R. 24. Importantly, the ALJ notes that both Ms. Power and Ms. Jones-Ivey do not provide any narrative explanation for their conclusions in comparison to Mr. Hall's report. R. 24. After distinguishing the medical opinions of Dr. Courtney and Dr. Vandiver, R. 23-25, the ALJ goes on to find:

The undersigned acknowledges the conflicting teacher evaluations, while noting that Mr. Hall's rather mild concerns contain much more detailed narrative support (12E). Ms. Jones-Ivey's concerns regarding the claimant wanting to chat and play video games rather than attend to math are concerning, but are not suggestive of marked limitation, especially when considered in combination with the claimant's reasonable academic progress with a limited 45-minute per week behavioral intervention service.

The undersigned again notes that the most Individual Education Plan asserts that all teachers describe the claimant as a joy to teach (19F). Although the undersigned has fully considered the hearing testimony and other subjective allegations, the overall record does not support more than moderate limitation in any functional domain for any 12 month period since the alleged onset date, and especially indicates generally improvement since the protective filing date.

R. 25.  Indeed, the ALJ acknowledges the conflicting teacher evaluations, again notes why he gives more value to Mr. Hall's questionnaire due to the detailed narrative and points out the inconsistencies in Ms. Jones-Ivey's concerns in comparison to Claimant's academic progress and education plan.  R. 25.

To the extent that Plaintiff argues the ALJ erred because Ms. Jackson's August 2015 Questionnaire was not discussed, the report predates Claimant's application by more than five years, R. 165-78, and a failure to discuss a nonmedical piece of evidence does not mean the ALJ did not consider the evidence.  Cannady for R.E.C. v. Saul, No. 5:20-cv-2, 2021 WL 1603616, at *4 (S.D. Ga. Feb. 26, 2021) *adopted by* 2021 WL 1100422 (Mar. 23, 2021) ("The teachers' opinions are non-medical pieces of evidence. See 20 C.F.R. §§ 404.1513(a), 416.913(a)."); Cole ex rel. J.G.C. v. Comm'r of Soc. Sec., No. 6:11-CV-1187, 2012 WL 4077233, at *6 (M.D. Fla. Sept. 17, 2012).  The law is well settled the ALJ is not required to refer specifically to *every* piece of non-medical evidence in his decision, as long as he considered the Claimant's medical condition as a whole and did not broadly reject his claims.  Figuera v. Comm'r of Soc. Sec., 819 F. App'x 870, 872 (11th Cir. 2020) ("[A]ny failure by the ALJ to fully discuss a teacher's

opinion cannot constitute reversible error by the ALJ if the ALJ appears to have considered all evidence in the record."); see also Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014); Dyer, 395 F.3d at 1211.  As evidenced by the thorough discussion of Claimant's medical and educational history discussed above and in § 3 *supra*, the Court has no doubt the ALJ considered Claimant's condition as a whole.  See R. 19-26.  Thus, the ALJ's failure to discuss the remote teacher questionnaire of Ms. Jackson does not constitute error.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED AND RECOMMENDED this 22nd day of January, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA